UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BENJAMIN FORREST
MCCONLEY,

   Petitioner,

  v.          Case No.: 5:25-cv-346-SPC-PRL

WARDEN, FCC COLEMAN - LOW,

   Respondent,

_____/

## **OPINION AND ORDER**

Petitioner Benjamin Forrest McConley is a federal prisoner proceeding pro se on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). He asserts the Federal Bureau of Prisons (BOP) has failed to award him program-based time credits for the period he was in custody prior to his sentencing and until his designation to a BOP facility. The Warden responds that the petition should be denied because McConley's sentence has been correctly calculated, and he is not entitled to the credits he seeks. (Doc. 5). McConley filed a reply. (Doc. 6). For the reasons below, the Court determines it lacks jurisdiction over McConley's claims and dismisses the petition.

## I.  Background

McConley was indicted on federal charges on July 25, 2019, and he was arrested and detained by federal authorities on August 16, 2019. (Doc. 5-1 at 13); *see also United States v. McConley*, No. 1:19-cr-20447, Docs. 1, 7 (S.D. Fla.).

After pleading guilty, McConley was sentenced on September 14, 2021, to 156 months' imprisonment for one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. *See McConley*, No. 1:19-cr-20447, Docs. 49, 158. Between his August 16, 2019 arrest and November 23, 2021, McConley was in custody at FDC Miami. He was designated to FCI Miami and released to BOP custody on November 23, 2021. (Doc. 5-1 at 2–3, 8). The BOP has awarded McConley 365 days of FSA credits to advance his release date. He has earned an additional 230 days of credits towards placement in prerelease custody. (*Id.* at 8).

## II.   Legal Standards

### A. Habeas Corpus

The fundamental purpose of a habeas proceeding is to allow a person in custody to attack the legality of that custody, and the "traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). For example, when a prisoner makes a claim that, if successful, would invalidate his conviction or shorten his sentence, the claim must be brought as a habeas petition, not as a civil rights claim. *See Edwards v. Balisok*, 520 U.S. 641, 645–46 (1997); *Heck v. Humphrey*, 512 U.S. 477 (1994).

Conversely, a place-of-confinement claim is generally not cognizable in a habeas proceeding. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)

(describing "prisoner classification" as one of the "conditions of confinement" that fall within the discretionary control of federal prison officials). Although there is no binding precedent on the issue, the Fifth Circuit has adopted a "'bright line rule' . . . that if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit." *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam)).

Prerelease custody determinations are placement decisions committed to the discretion of the BOP.  *See* 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621."); 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").  "The decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002).

## B. The Second Chance Act (SCA) and the First Step Act (FSA)

"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  The SCA authorizes the BOP to place a prisoner in a community correctional facility (also known

as a Residential Reentry Center, RRC, or halfway house) or in home confinement to prepare for reentry into society prior to the expiration of the prisoner's term of custody. *See* Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251 (amending 18 U.S.C. § 3624(c)). Generally, a prisoner is eligible to spend up to 12 months in prerelease custody at an RRC prior to the end of the sentence. 18 U.S.C. § 3624(c)(1). A prisoner is also eligible for a period of home confinement not to exceed "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

The FSA created a risk-and-needs assessment system under which prisoners could earn incentives, including time credits to be applied toward placement in prerelease custody and toward early placement on supervised release, for successful participation in evidence-based recidivism-reduction programming or productive activities. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 101; *see also* 18 U.S.C. §§ 3624(g), 3632(d)(4). To this end, Congress expanded the time frame for release and prerelease custody by exempting FSA time credits from the time limits in subsections (b) and (c) of § 3624. 18 U.S.C. § 3624(g)(10). Subsection (b) limited early release to no more than "54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b). The FSA expanded on this by authorizing an additional 12 months of time credits to be applied toward early release from prison toward a term of supervised release. 18 U.S.C. § 3624(g)(3). Subsection

4

(c) limited placement in home confinement to 6 months and placement in an RRC to 12 months. 18 U.S.C. § 3624(c)(1) and (2). The FSA expanded on this by directing that time credits "be applied toward time in prerelease custody" without regard to the limit. 18 U.S.C. §§ 3624(g)(10), 3632(d)(4)(C). "But [§ 3624] contains no mandatory language that requires the BOP to allow a prisoner to serve any time whatsoever in confinement in a community corrections facility or on home confinement." *Ramirez v. Warden, FCI La Tuna Camp*, No. 24-cv-255, 2024 WL 4683318, at *4 (W.D. Tex. Nov. 5, 2024). Finally, 34 U.S.C. § 60541(a)(2) grants the BOP the discretion to offer a prisoner "the maximum allowable period in a community confinement facility" and other "such other incentives" as are considered appropriate—but it does not permit the BOP to reduce a prisoner's term of imprisonment.

## III.  Discussion

McConley, whose projected release date is February 8, 2030,[1] asserts that he should be eligible to have received earned time credits under the FSA and SCA prior to his sentencing and, after he was sentenced, while in custody waiting to be transferred to the BOP. (Doc. 1 at 6–7; Doc. 6 at 3–7). The

---

[1] *See* Inmate Locator, Federal Bureau of Prisons, available at https://www.bop.gov/inmateloc/ (last visited Apr. 20, 2026).

Warden contends McConley was not eligible to earn credits until he was transferred into BOP custody in November 2021. (Doc. 5 at 3–5).

Here, the relief McConley seeks would not result in his release from custody sooner. Because McConley has been awarded the maximum 365 days of credit towards his scheduled release from custody, any additional earned time credits would only allow for his transfer to a halfway house or home confinement, known as prerelease custody. If the Court were to grant McConley his requested relief, he would not be released from custody sooner. Instead, he would simply serve the remainder of his term of imprisonment somewhere different—in home confinement or at an RRC, both of which are a form of prerelease custody. "Prerelease custody is part of a term of imprisonment." *Wessels v. Houden*, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (citing § 3624(c) and collecting cases). Any relief the Court could grant would not secure release from illegal custody or shorten McConley's term of imprisonment.

"Moreover, neither the First Step Act nor the Second Chance Act guarantee placement in an RRC [or home confinement] for any amount of time. And there is no constitutional right to be confined in a particular place . . . ." *Cheung v. Goldey*, No. 1:25-cv-412, 2025 WL 1262363, at *2 (W.D. La. Apr. 8, 2025), *report and recommendation adopted*, 2025 WL 1762971 (W.D. La. June 25, 2025). The BOP alone "shall designate the place of the prisoner's

imprisonment," and such "a designation of a place of imprisonment . . . is not reviewable by any court." 18 U.S.C. § 3621(b); 18 U.S.C. § 3624(c)(4) (stating that nothing in this statute "shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621"); *accord Tapia v. United States*, 564 U.S. 319, 331 (2011).

Thus, the Court determines it lacks jurisdiction over McConley's claim. *See Taylor v. Warden, FCC Yazoo City Low I*, No. 3:25-cv-100, 2025 WL 3091700, at *3 (S.D. Miss. Nov. 5, 2025) (noting habeas petition challenging ETCs and prerelease custody "better characterized as a challenge to the 'conditions' rather than the 'fact or duration' of his confinement") (citation omitted).

Even if the Court had jurisdiction, McConley would not be entitled to the relief he seeks. The FSA precludes earned time credits for successfully completed programming in two circumstances (1) when a prisoner earns the credits prior to the FSA's enactment; or (2) a prisoner earns the credits during official detention prior to his sentencing. *See* 18 U.S.C. § 3632(d)(4)(B). Section 3585(a) provides a prison sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). McConley is not entitled to earn FSA earned time credits for his time in custody from his arrest on August 16,

2019, through his sentencing on September 14, 2021. *See Ovalle v. Broton*, No. 7:25-cv-969, 2026 WL 546494, at \*4 (N.D. Ala. Jan. 23, 2026) ("[B]ased upon the previous statutory review, Ovalle does not stand entitled to FSA earned time credits for any programing she successfully completed prior to her sentencing"), *report and recommendation adopted*, 2026 WL 544278 (N.D. Ala. Feb. 26, 2026).

The Court recognizes that other courts have entertained habeas challenges similar to McConley's regarding earning ETCs from the time between sentencing and arrival at their designated facility. "Courts around the country have differed on whether prisoners should receive ETCs for the time between sentencing and arrival at their designated facility." *Mendez v. Gunther*, No. 24-cv-3050, 2025 WL 1757689, at \*6 (D. Ariz. Apr. 2, 2025), *report and recommendation adopted*, 2025 WL 1754983 (D. Ariz. June 25, 2025). However, "[i]t is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted). The FSA plainly states that prisoners may earn credits for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). To the extent McConley seeks ETCs for the period between his September 14, 2021 sentencing and his designation on November 23, 2021, he has not shown that he participated in

any programming during that period of time. *See Akhatsegbe v. Greene*, No. 1:24-cv-1871, 2025 WL 297699, at *4 (M.D. Pa. Jan. 24, 2025) (noting petitioner failed to demonstrate that he successfully participated in programming to justify an award of additional time credits). Thus, he has failed to meet his burden to show he is entitled to relief. *See Richman v. Graham*, No. 9:24-cv-1635, 2024 WL 5507526, at *6 (D.S.C. Dec. 19, 2024) (noting a federal inmate has no liberty interest in FSA credits), *report and recommendation adopted*, 2025 WL 732316 (D.S.C. Mar. 7, 2025).

## IV.    Conclusion

Because the relief McConley seeks would not result in his being released from custody sooner, the Court lacks jurisdiction over his claims. Even if the Court had jurisdiction, Petitioner is not entitled to relief as he has not met his burden to establish his right to habeas relief.

Accordingly, it is now

**ORDERED:**

1. McConley's petition (Doc. 1) is **DISMISSED** for lack of jurisdiction.

2. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions and deadlines, and close this case.

9

**DONE AND ORDERED** in Fort Myers, Florida on April 21, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:  OCAP-2
Copies:  All Parties of Record

10